UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIE TERMEL JONES,

        Plaintiff,

v.                                 Case No. 8:22-cv-172-WFJ-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

    Plaintiff seeks judicial review of the denial of his claim for Supplemental

Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was

not based on substantial evidence and failed to employ proper legal standards, it is

recommended that the Commissioner's decision be reversed and remanded.

## I.

### A.    Procedural Background

    Plaintiff filed an application for SSI on March 4, 2019 (Tr. 161-69). The

Social Security Administration ("SSA") denied Plaintiff's claims both initially and

upon reconsideration (Tr. 79-81, 86-91). Thereafter, Plaintiff requested an

administrative hearing (Tr. 92-93). Per Plaintiff's request, the ALJ held a hearing at

which Plaintiff appeared and testified (Tr. 27-51).[1] Following the hearing, the ALJ

issued an unfavorable decision finding Plaintiff not disabled and accordingly denied

---

[1] The hearing was held telephonically due to the COVID-19 pandemic (Tr. 13).

Plaintiff's claims for benefits (Tr. 10-26). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1973, claimed disability beginning on May 2, 2018 (Tr. 161). Plaintiff has a tenth-grade education (Tr. 187). Plaintiff did not have any past relevant work experience (Tr. 21, 37-38). Plaintiff alleged disability due to a gunshot wound to the face, facial paralysis, hearing loss, mastoiditis, and chronic ear infection (Tr. 186).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 4, 2019, the application date (Tr. 15). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: status-post gunshot wound to the face, partial jaw reconstruction and mastoidectomy, with residual Bell's palsy, chronic dislocation of the incudostapedial joint, left ear hearing loss, eye left lid and vision dysfunction, and recurrent otitis media (Tr. 15). Notwithstanding the noted impairments, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ then found that Plaintiff retained a residual functional capacity ("RFC") to perform light work subject to the following additional limitations: he can

2

occasionally lift twenty pounds, and frequently lift and carry ten pounds; he can stand or walk six hours, and sit six hours in an eight hour workday with normal breaks; he must avoid climbing ropes, scaffolds and ladders; he can occasionally climb ramps and stairs; he can frequently balance, stoop, kneel, crouch and crawl; he must avoid even moderate exposure to loud noise work environments; and he must avoid all industrial hazards (Tr. 17). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 18).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that, given Plaintiff's background and RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cashier, hotel housekeeper, and sale attendant (Tr. 22). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 22).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

**III.**

Plaintiff argues that the ALJ erred by: (1) failing to properly assess Plaintiff's RFC; (2) finding that jobs existed in the national economy in significant numbers which Plaintiff could perform; and (3) deciding the case without constitutional authority to do so.[2] For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

**A.    RFC**

Plaintiff argues that the ALJ failed to properly assess Plaintiff's RFC because the ALJ failed to properly evaluate prior administrative medical findings by the state agency consultants, the ALJ failed to include limitations related to Plaintiff's vision and eye-related impairments, and the ALJ failed to correctly evaluate Plaintiff's mental impairments.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically

---

[2] The undersigned addresses Plaintiff's issues presented as numbers 1, 3, 4, and 5 together as they are all regarding the RFC.

determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. § 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

### a.    Prior Administrative Medical Findings

Previously, in the Eleventh Circuit, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel.*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted); *see also* 20 C.F.R. § 416.927. Good cause existed where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary

finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). Moreover, if the ALJ assigned controlling weight to a treating source's medical opinion, the ALJ was not required to explain in the decision the weight he or she gave to the prior administrative medical findings from the state agency medical consultants. *See* 20 C.F.R. § 416.927. However, claims filed on or after March 27, 2017 are governed by a new regulation applying a modified standard to handling medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). Of note, the new regulations remove the "controlling weight" requirement when considering medical opinions and prior administrative medical findings for applications submitted on or after March 27, 2017. 20 C.F.R. § 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 895-98 (11th Cir. 2022); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (per curiam).[3]

Indeed, the Eleventh Circuit recently concluded that because the new regulations fall within the scope of the Commissioner's authority and are not arbitrary and capricious, the new regulations abrogate the Eleventh Circuit's prior precedents applying the so-called treating-physician rule. *Harner*, 38 F.4th at 896.

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

Accordingly, because Plaintiff submitted his application for benefits on March 4, 2019 (Tr. 161-69) the ALJ properly applied the new regulation.

Under 20 C.F.R. § 416.920c, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including from a claimant's medical source. 20 C.F.R. § 416.920c(a); *see Tucker v. Saul*, Case No. 4:19-CV-00759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Rather, in assessing a medical opinion and prior administrative medical finding, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, the area of the medical source's specialization, and other relevant factors. 20 C.F.R. § 416.920c(c)(1)-(5). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion or prior administrative medical finding are supportability and consistency. 20 C.F.R. § 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not

require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 416.920c(b)(1). As previously stated, beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 416.920c(c)(3)(i)-(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[4] 20 C.F.R. § 416.920c(b)(2).

Plaintiff raises two issues regarding the ALJ's evaluation of the prior administrative medical findings as it relates to the RFC. First, Plaintiff argues that in formulating the RFC and presenting hypothetical questions to the VE, the ALJ failed to limit Plaintiff's hearing to occasional given that State agency consultants Dr. Roland Gutierrez and Dr. James Patty opined that Plaintiff's hearing was limited to occasional (Doc. 12, at 11-12). Second, Plaintiff argues that the ALJ failed to include rest periods in Plaintiff's RFC and in the hypothetical questions to the VE, given that Dr. Gutierrez and Dr. Patty opined that Plaintiff was able to complete daily living activities with rest periods (Doc. 12, at 18-20).

---

[4] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

### i.     Hearing Limitations

In making his findings regarding the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ noted that while Plaintiff "certainly ha[d] dysfunction in the ear it is related to areas of the middle ear rather than the vestibular apparatus . . ." (Tr. 17). Later, in making his findings regarding Plaintiff's RFC, the ALJ noted that Plaintiff asserted that he was unable to work since the alleged onset date due to residual effects of a gunshot wound to the face which, among other issues, resulted in hearing loss and sensitivity to noise (Tr. 17). The ALJ noted that as a result of Plaintiff's inability to afford reconstructive surgery, Plaintiff continued to suffer complications from his injury (Tr. 18). Specifically, Plaintiff experienced chronic auditory canal stenosis, hearing loss, pain, and recurrent ear infections (Tr. 18). The ALJ also found that the evidence showed Plaintiff had ongoing issues with opacification of the mastoids, middle ear and mastoidectomy space (Tr. 18). Regarding Plaintiff's daily function, the ALJ noted that Plaintiff has "no left side hearing" (Tr. 18). In articulating his reasoning for finding certain limitations, the ALJ found that "it is reasonable to conclude that hearing loss in the left ear, recurrent drainage and dryness in the left eye, and reported somnolence from the use of pain medications and substances like alcohol and cannabis could result in diminished situational awareness in the work setting" (Tr. 19). The ALJ concluded that in order "[t]o account for these potential issues, the claimant should avoid all exposure to industrial hazards, as diminished awareness in these settings could result in catastrophic injury" (Tr. 19).

In discussing Plaintiff's headaches, as reported in his application, the ALJ noted that Plaintiff had not reported persistent issues with headaches since the application date (Tr. 19). Thus, the ALJ concluded that "these symptoms do not appear to have been persistent for twelve months or more since the alleged onset date" (Tr. 19). Nevertheless, the ALJ found that as a result of Plaintiff's reports concerning intolerance of loud noises, "he must avoid even moderate exposure to loud noise environments" (Tr. 19).

In discussing the persuasiveness of the medical opinions and prior administrative medical findings in the record, the ALJ found Dr. Brian Kellermeyer's opinion that Plaintiff would not be able to work while suffering from post-surgical infections in the left ear was not persuasive (Tr. 20). Specifically, the ALJ noted that "[w]hile clinical notes showed ongoing issues with drainage from the eye and ear, [Plaintiff] retains normal function in his left eye and ear" (Tr. 20). Rather, the ALJ noted, while drainage and infection issues were undoubtedly uncomfortable for Plaintiff, the clinical records did not support Dr. Kellermeyer's opinion that Plaintiff would be unable to work during periodic infections in the left eye and ear (Tr. 20). As to Plaintiff's exertional assessment, the ALJ found persuasive the prior administrative medical findings of the state agency medical consultants and stated the following:

> The undersigned was also persuaded by the remaining exertional assessments contained in the prior administrative medical findings. (Ex. 1A, 3A). There is little evidence to show the claimant cannot walk, stand or sit for extended periods of time. Major complications with dizziness have not appeared regularly in objective clinical assessments since the application date, with findings showing grossly

12

normal gait, and the claimant has reported relatively good control with pain symptoms, such that extended sitting, standing and walking should be tolerable. (Ex. 1A, 3A; *See, e.g.,* Ex. 7F, Pg. 8, which shows a fifty percent reduction in symptoms with medication; Ex. 10F, Pg. 25, 30). Finally, the prior administrative medical findings on exertional function are fully consistent with musculoskeletal evaluations performed after the application date in 2019 and 2020, which show grossly normal function in the spine, upper extremities, and lower extremities. (Ex. 10F, Pg. 25, 30). Therefore, the prior administrative medical findings were generally persuasive on the issue of exertional function, *and the undersigned has only provided additional restrictions on nonexertional functions based on the claimant's reports and testimony, as detailed supra.*

(Tr. 20-21) (emphasis added).

There is some confusion surrounding Dr. Gutierrez's and Dr. Patty's prior administrative medical findings and the ALJ's interpretation of the same. In rating Plaintiff's non-exertional limitations during the initial evaluation, Dr. Gutierrez opined that Plaintiff had communicative limitations and identified them as "limited" hearing and noted "left" (Tr. 59). In explaining the communicative limitation, Dr. Gutierrez opined that Plaintiff's hearing was "limited to occasional" (Tr. 59). At the reconsideration evaluation, Dr. Patty made the same findings as Dr. Gutierrez–"hearing limited to occasional" (Tr. 72).

Plaintiff and the Commissioner have different interpretations of what the ALJ meant when he noted that "*and the undersigned has only provided additional restrictions on nonexertional functions based on the claimant's reports and testimony, as detailed supra*" (*see* Tr. 21). Plaintiff argues that although the ALJ stated that he had *only provided additional restrictions* on non-exertional functions based on Plaintiff's reports and testimony, the ALJ contradicted himself by omitting Dr. Gutierrez's

and Dr. Patty's limitations regarding Plaintiff's hearing, which was designated as "occasional" (Doc. 12, at 11). On the other hand, the Commissioner argues that the ALJ rejected any greater non-exertional limitation from the prior administrative medical findings and only provided non-exertional limitations based on Plaintiff's reports and testimony (Doc. 13, at 6). In support of her argument, the Commissioner notes that the ALJ found that while clinical notes showed ongoing issues with drainage from the eye and ear, Plaintiff retained normal function in his left eye and ear (Doc. 13, at 6).

The Commissioner's argument is not persuasive. The ALJ noted that he "only provided *additional* restrictions on nonexertional functions" while finding the prior administrative medical findings generally persuasive on the issue of exertional function. "Additional restrictions" in the context of the sentence likely means that the ALJ was providing restrictions in addition to the ones already provided by the state agency consultants. Although the ALJ need only explain the consideration of the opinion's supportability and consistency on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source – here, the ALJ does not mention Dr. Gutierrez's and Dr. Patty's opinion on the non-exertional limitations other than to state that he has provided additional restrictions. *See* 20 C.F.R. § 416.920c(b)(1). However, the ALJ did not include a hearing limitation in the RFC, although one was identified by the state agency consultants, or specifically discuss why a hearing limitation was not appropriate when he found that Plaintiff could not hear from his left ear (*see* Tr. 17).

14

Moreover, the records cited by the ALJ and the Commissioner in her response are conflicting. The Commissioner argues that "the treatment notes cited by the ALJ include documentation that despite a history of eye/ear issues and some ear and eye leaking, Plaintiff *denied* any difficulty hearing or vision change (Tr. 552, 557, 560, 564)" (Doc. 13, at 6) (emphasis added). However, these citations to the record, which are the same that the ALJ cited when concluding that Dr. Kellermeyer's opinion was unpersuasive because Plaintiff retained normal function in his left eye and ear, reveal conflicting medical evidence. For instance, while it is true that in those records there is reference to Plaintiff's review of symptoms and Plaintiff reporting no difficulty in hearing or ear pain (Tr. 552, 557, 560, 564), during those same visits there are also notations of Plaintiff as hard of hearing or deaf in one or both ears (Tr. 550, 555, 560, 564). It is also noted that Plaintiff reports having "ongoing (but improved slightly) drainage with pain from left ear and left eye again" (Tr. 552), and that Plaintiff's reason for the visit is for drainage with pain from the left eye and ear (Tr. 555). (*See also* Tr. 560, 564). It is unclear how the ALJ concluded that the function of the ear was normal when he repeatedly found Plaintiff suffered from hearing loss.

Although this Court may not reweigh the evidence or substitute its own judgment for that of the ALJ, in this case, the ALJ's decision is internally inconsistent. These inconsistencies may have resulted in the ALJ crafting different limitations regarding Plaintiff's hearing and his hypothetical questions to the VE. As a result, a change in hypothetical questions may have changed the VE's

testimony regarding Plaintiff's ability to perform the requirements of certain representative occupations. *See Mills v. Astrue*, 226 Fed.Appx. 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ").

Given that it is unclear whether the ALJ rejected the state agency consultants' findings regarding a hearing limitation or the ALJ failed to consider potential hearing limitations, coupled with the reliance on conflicting medical records regarding Plaintiff's ear function and hearing, it is impossible for the undersigned to determine whether the ALJ's decision is supported by substantial evidence. Therefore, the undersigned recommends that this matter is due to be remanded for further proceedings.

### ii.        Rest Periods

Plaintiff argues that the ALJ erred in failing to include rest periods in the RFC and in the hypothetical questions to the VE given that Dr. Gutierrez and Dr. Patty stated that Plaintiff could "complete activities of daily living with some limitations but is able to complete them with rest periods." (Doc. 18-20). The Commissioner does not specifically address this argument, rather, she generally addresses the issue of whether substantial evidence supports the ALJ's evaluation of the prior administrative medical findings of Dr. Gutierrez and Dr. Patty.

In crafting the RFC, the ALJ found that Plaintiff could perform light work and could stand and walk six hours and sit six hours in an eight-hour workday with normal breaks (Tr. 17). These findings are supported by Dr. Gutierrez's and Dr. Patty's findings. For instance, Dr. Gutierrez and Dr. Patty found that Plaintiff could perform light work (Tr. 61, 74) and could stand and walk six hours and sit six hours in an eight-hour workday with normal breaks (Tr. 58, 70). Although Dr. Gutierrez and Dr. Patty found that Plaintiff "can complete activities of daily living with some limitations but is able to complete with rest periods," this is not contradictory to the ALJ's findings or Dr. Gutierrez and Dr. Patty's own findings regarding work breaks (Tr. 59, 72).

Based on the foregoing, substantial evidence supports the ALJ's RFC finding as to Plaintiff's ability to work with normal breaks. However, to the extent that the ALJ failed to consider evidence of Plaintiff's hearing loss, the undersigned refers back to its recommendation to remand the matter for further proceedings.

### b.   Vision Limitations

Plaintiff argues that the ALJ failed to include limitations in the RFC related to Plaintiff's vision and eye-related impairments and in hypotheticals to the VE, given that the ALJ found Plaintiff's left eye lid and vision dysfunction to be severe impairments (Doc. 12, at 16-18). The Commissioner contends that substantial evidence supports the ALJ's evaluation of Plaintiff's visual issues (Doc. 13, at 9-10).

In addressing Plaintiff's RFC, the ALJ found that "[t]he medical records also shows residual dryness and pain in the left eye due to partial facial paralysis, which

renders the claimant unable to fully close his left eyelid" (Tr. 18). The ALJ also noted that Plaintiff continued to suffer from "periodic drainage in the left eye and dryness" (Tr. 18). However, the ALJ noted that Plaintiff "reported at least 50% improvement with pain medications, and treatment notes indicate improving lagophtalmos [sic] with the left eyelid" (Tr. 18). Based on this and Plaintiff's history of infections, the ALJ found it reasonable to conclude that "hearing loss in the left ear, recurrent drainage and dryness in the left eye, and reported somnolence from the use of pain medications and substances like alcohol and cannabis could result in diminished situational awareness in the work setting" (Tr. 19). As a result, the ALJ found that Plaintiff was limited to "avoid all exposure to industrial hazards, as diminished awareness in these settings could result in catastrophic injury (Tr. 19). Moreover, the ALJ found that although recent musculoskeletal assessments showed little in the way of motor dysfunction or imbalance, the Plaintiff had repeatedly indicated that he suffered from dizziness and impaired vision in the left eye, among other things (Tr. 20). Thus, the ALJ found that light lifting and carrying limitations were reasonable for Plaintiff (Tr. 20).

The record supports the ALJ's findings. Dr. Christine Kim, who provided an opinion regarding Plaintiff's special senses and speech, opined that Plaintiff did not present with any visual limitations (Tr. 581). Discharge records from Sarasota Memorial Hospital following Plaintiff's shooting also state that Plaintiff's cornea was clear and although he had weakness of orbicularis muscle in the left eye, he had no significant lagophthalmos and was asymptomatic (Tr. 433). Plaintiff's vision

exams noted vision in his left and right eye was 20/30 (Tr. 433). Plaintiff had similar vision acuity results during other visits (Tr. 474, 542, 544, 546). Moreover, the state agency consultants did not find that Plaintiff's required any visual limitations (Tr. 59, 71).

Contrary, to Plaintiff's argument, the ALJ considered Plaintiff's eye-related issues and concluded that they resulted in certain limitations for Plaintiff. Substantial evidence supports the RFC as to Plaintiff's vision issues. However, to the extent that the ALJ failed to consider evidence of Plaintiff's hearing loss, the undersigned refers back to its recommendation to remand the matter for further proceedings.

### c.    Mental Impairments

Plaintiff argues that although the ALJ found Plaintiff mildly impaired in all four areas of broad mental functions, the ALJ failed to include any limitations related to these mental impairments in the RFC or in the hypothetical questions to the VE. The Commissioner contends that because the ALJ found that Plaintiff had only mild limitations, the ALJ was not obligated to account for such limitations in the RFC or in hypothetical questions to the VE.

Plaintiff correctly asserts that, although an ALJ need not determine whether every alleged impairment is "severe" at step two, the ALJ must consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). However, in *Tuggerson-Brown*, the Eleventh

Circuit noted that, where the ALJ stated that he evaluated whether the plaintiff had an impairment or combination of impairments that met a listing and that he considered all symptoms in determining the RFC, such statements were enough to demonstrate that the ALJ considered all the necessary evidence. *Id.* at 952 (citation omitted).

Here, the ALJ used the psychiatric review technique and found that Plaintiff experienced only mild limitations in each of the four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself (Tr. 16). *See also* 20 C.F.R. § 416.920a(c)(3). The ALJ found that Plaintiff's "medically determinable mental impairments of adjustment disorder with anxiety and depressed mood, cannabis abuse, and alcohol abuse, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere" (Tr. 16). In doing so, the ALJ thoroughly discussed the evidence of record supporting his findings, stating:

> To being, the undersigned notes that these conditions were diagnosed shortly after the claimant's gunshot incident in 2018, and he has reported ongoing issues with anxiety, depression, mood swings and nervousness, but mental status examinations completed after the protective filing consistently show grossly normal mental function, including pleasant and cooperative behaviors, good judgment, normal or appropriate mood and affect, and normal memory. (Ex. 3F, Pg. 2; Ex. 4F, Pg. 96-97; Ex. 7F, Pg. 3, 49, Ex. 10F, Pg. 5). This evidence shows his conditions have not significantly limited mental function during the period at issue, and no more than mild limitations are warranted in mental function for the claimant's subjective reports . . . .

(Tr. 16). The ALJ also noted that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 16). Moreover, "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (Tr. 16). The ALJ went on to note that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 16). In the RFC assessment, the ALJ noted that Plaintiff had not manifested routine abnormalities in clinical assessments of mental function for twelve months or more since the application date (Tr. 19). Therefore, the ALJ concluded, more significant limitation on mental function were not warranted by the record (Tr. 19).

During multiple physical examinations, Plaintiff failed to report any depression, anxiety, hallucinations, agitation, dementia, delirium, sleep disturbances, alcohol abuse, suicidal thoughts, mood swings, or memory loss (Tr. 566, 571, 576). Additionally, mental status exams yielded that Plaintiff presented as having good judgment, normal mood and affect, being active and alert, oriented to time, place, and person, and have normal recent and remote memory (Tr. 315, 317, 319, 321, 323, 325, 333, 338, 474, 479, 525, 542, 544, 546, 566, 572, 577).

"The ALJ was required to consider the 'paragraph B' criteria when he developed Plaintiff's RFC, as the ALJ is required to consider all of Plaintiff's impairments." *Kinnard v. Astrue*, No. 8:09-cv-628, 2010 WL 3584583, at *5 (M.D.

Fla. Aug. 26, 2010), adopted by 2010 WL 3584557, at *1 (M.D. Fla. Sept. 10, 2010), aff'd, 426 F. App'x 835 (11th Cir. 2011) (per curiam) (unpublished). Here, the ALJ's analysis reflects that he considered Plaintiff's mild limitations identified at step two when making his RFC finding. Indeed, Plaintiff has not demonstrated that his mental impairments caused him nothing more than mild limitations or "that []he is limited to a greater extent than found by the ALJ in [his] RFC finding." *Tisdale v. Comm'r of Soc. Sec.*, Case No: 8:15-cv-848, 2016 WL 4975329, at *6 (M.D. Fla. Sept. 19, 2016) (rejecting the plaintiff's "conten[tion] that because the ALJ found that Plaintiff had mild limitations in social functioning and concentration at step two when considering the 'paragraph B' criteria, the ALJ was required to include these limitations in her RFC finding").

Based on the foregoing, substantial evidence supports the ALJ's RFC findings as to Plaintiff's mental condition not impeding his ability to perform work activities or warranting additional limitations. Nevertheless, to the extent that the ALJ failed to consider evidence of Plaintiff's hearing loss, the undersigned refers back to its recommendation to remand the matter for further proceedings.

## B.    VE testimony

Plaintiff argues that substantial evidence does not support the existence of a significant number of jobs in the national economy that Plaintiff can perform given that the RFC prohibits even moderate exposure to loud noise while the three identified occupations require a moderate noise intensity level. Additionally, the VE was unable to testify if or what effect the COVID-19 pandemic had on the job

numbers he provided (Doc. 12, at 13-15). The Commissioner contends that the VE's testimony constituted substantial evidence supporting the ALJ's step-five finding (Doc. 13, at 7-9).

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips*, 357 F.3d at 1239; 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show that other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (citation omitted). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted); *cf.* 20 C.F.R. § 416.912(b)(3).

In doing so, the ALJ may "take administrative notice of reliable job information available from various governmental and other publications[,]" including the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor.[5] 20 C.F.R. § 416.966(d). An ALJ may also utilize the services

---

[5] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

of a VE or other specialist in making the determination at step five as to whether a claimant's work skills can be used in other work and as to the specific occupations in which such skills can be used. 20 C.F.R. § 416.966(e). A VE is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the ALJ consults a VE. *See id.* at 1243.

Over the years, issues have arisen around the ALJ's duty to investigate and develop an adequate factual record to support a disability determination in cases where the VE's testimony is contradicted by the DOT, upon which the SSA frequently relies. *See, generally, Washington*, 906 F.3d at 1355-61. With the issuance of SSR 00-4p, the SSA offered its policy interpretation regarding the issue. *See id.* at 1356. Under SSR 00-4p, when an apparent unresolved conflict exists between the VE evidence and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE [] evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at * 2 (Dec. 4, 2000). The ALJ must inquire, on the record, whether a conflict exists. *Id.* If a conflict exists, the ALJ must resolve the conflict by determining whether the explanation provided by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the information contained in the DOT. *Id.* Reasonable explanations may include the availability of information about a particular job's requirements or about

occupations not listed in the DOT but available in other reliable publications, information obtained directly from employers, or from a VE's experience in job placement or career counseling. *Id.*

Recently, in considering the application of SSR 00-4p, the Eleventh Circuit concluded that ALJs maintain "an affirmative duty to identify apparent conflicts between the testimony of a [VE] and the DOT and resolve them." *Washington*, 906 F.3d at 1356. In carrying out that duty, the ALJ must do more than simply ask the VE whether his or her testimony is consistent with the DOT. *Id.* According to the Eleventh Circuit, when a conflict has been identified, SSR 00-4p requires the ALJ to provide a reasonable explanation for the discrepancy and to detail in the decision how the ALJ resolved the conflict. *Id.* The failure to do so means that the ALJ's decision, if based upon the contradicted VE testimony, is not supported by substantial evidence. *Id.*

SSR 00-4p thus imposes a duty on the ALJ to identify and resolve "apparent conflicts" between DOT data and VE testimony. *Id.* at 1362. Under this framework, an "apparent conflict" is one "that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

In this instance, in response to hypotheticals posed by the ALJ, the VE testified that a hypothetical individual with Plaintiff's limitations could perform the

following jobs which existed in significant numbers in the national economy: (1)

cashier, DOT 211.462-010; (2) hotel housekeeper, DOT 323.687-010; and (3) sale

attendant, DOT 299.677-010 (Tr. 46). The ALJ found that "[p]ursuant to SSR 00-

4p, the undersigned has determined that the vocational expert's testimony is

consistent with the information contained in the Dictionary of Occupational Titles

(Tr. 22).

At the hearing, the ALJ and the VE had the following exchange:

[ALJ:] I'll have a couple of questions for [the VE] if I may. Okay first question would be [VE], let's assume we have an individual with a tenth-grade education but no work experience, the same education and work experience as the claimant. And let's assume this person can occasionally lift 20 pounds, frequently lift and carry 10 pounds. Stand or walk for about six hours, sit for six hours. And this is with normal and customary breaks throughout an eight-hour workday. This person should avoid climbing ropes, scaffolds, and ladders. Can occasionally climb ramps and stairs. Can frequently balance, stoop, kneel, crouch, and crawl. This person *must avoid even moderate exposure to loud noise work environments* and should avoid all hazards industrial or otherwise. Could that person work?

[VE:] I believe there would be jobs that I could identify under this hypothetical. Let me just read this back to myself. There are examples of jobs that could be done under this hypothetical would include the job of a cashier 211.462-010. Light, unskilled, SVP 2. There are approximately 573,000 existing jobs in the national economy. The job of a hotel housekeeper 323.687-014. Light, unskilled, SVP 2. Approximately 219,000 existing jobs in the national economy. The job of 2 sales attendant 239.677-010. Light, unskilled, SVP 2. Approximately 291,000 existing jobs in the national economy.

(Tr. 45-46) (emphasis added). Plaintiff alleges that the three jobs identified by the

VE and adopted by the ALJ include an employee's exposure to moderate noise

intensity level and this is in conflict with the ALJ's RFC and hypothetical regarding

26

avoiding "even moderate exposure to loud noise work environments" (Doc. 12, at 13-15).

Plaintiff correctly notes that the three jobs proposed by the VE and adopted by the ALJ require an employee's exposure to moderate noise intensity level – (1) cashier, DOT 211.462-010, Noise Level: Level 3 Moderate (*see* 1991 WL 671840); (2) hotel housekeeper, DOT 323.687-010, Noise Level: Level 3 Moderate (*see* 1991 WL 672783); and (3) sale attendance, DOT 299.677-010, Noise Level: Level 3 Moderate (*see* 1991 WL 672643). Although the DOT addresses the noise level, it is silent as to the definition of these levels. However, the U.S. Department of Labor's *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (the "SCO") uses a five-level ranking scale to determine the noise intensity level to which a worker is exposed in the job environment. *See* United States Dept. of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993), App. D-2. The SCO describes Noise Intensity Level 3 – Moderate, as the noise level associated with "business office[s] where type-writers are used; department store; grocery store; light traffic; fast food restaurant at off-hours." *Id*. In contrast, Noise Intensity Level 4 – Loud, is described as "can manufacturing department; large earth-moving equipment; heavy traffic." *Id*.

The undersigned does not find that an apparent conflict exists between the VE's testimony and the DOT. The ALJ limited Plaintiff to avoiding even moderate exposure to *loud noise*, not moderate exposure to *moderate noise*. Given that all three

jobs are rated as level 3 moderate noise which is not in conflict with the RFC or the DOT, substantial evidence supports the ALJ's findings in step five.

Plaintiff also argues that when Plaintiff's counsel asked the VE whether the job numbers were consistent with the effects of the pandemic on the job market, the VE testified that the best he could say is "possibly" (Doc. 13, at 14). Plaintiff's counsel and the VE engaged in the following exchange:

> [ATTNY:] All right. And then the last question I have, and I've been asking every vocational witness this, and in terms of the numbers of jobs because we're as we talked about, I mean we're now a year into our pandemic, I'm not aware of any numbers that have been released by the Department of Labor, Bureau of Labor Statistics in 2020 or 2021, so are we still looking at the last numbers from the last of May 2019?
>
> [VE:] Yes.
>
> [ATTNY:] All right. And do you have an opinion based on your experience as to the numbers you're giving us if those are numbers that are actually consistent with what's occurring in our country now with regard to the jobs identified?
>
> [VE:] That's a big question.
>
> [ATTNY:] And I don't know the answer. I mean, I don't know if any of us know the answer to be perfectly honest with you, but I never thought I'd be asking this question, Judge –
>
> [VE:] Yeah –
>
> [ATTNY:] – because I thought that the pandemic would be over.
>
> [VE:] – honestly, it's something that I think about and as I look at the numbers, *there are slight changes*, but I don't think that it's been a real big issue for the Department of Labor to be dealing with given everything else that's going around.
>
> So, I mean, the best that I can say is possibly.

[ATTNY:] Okay.

[VE:] I -- you know, I don't think that the numbers would be dramatically reduced but, I mean, there potentially could be some.

(Tr. 48-49). The ALJ is in the best position to assess the VE's credibility, who testified based on his knowledge and experience. In his testimony, the VE stated that he saw slight changes but nothing to warrant the DOT issuing new guidance (Tr. 49). The ALJ found that the VE's testimony was consistent with the DOT (Tr. 22). Accordingly, in this case, the ALJ properly relied on the VE's testimony that an individual with the same limitations as Plaintiff could perform the jobs of cashier, hotel housekeeper, and sale attendant. Nevertheless, to the extent that the ALJ failed to consider evidence of Plaintiff's hearing loss, the undersigned refers back to its recommendation to remand the matter for further proceedings.

## C.    42 U.S.C. § 902(a)(3) – Separation of Powers

Plaintiff argues that the ALJ and the Appeals Council lacked the constitutional authority to decide his case. Plaintiff contends that 42 U.S.C. § 902(a)(3)'s removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the separation of powers, and thus, the SSA's structure is constitutionally invalid. (*See* Doc. 12 at 22-24 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))).

The Commissioner "agree[s] that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," (Doc. 13, at 13 (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45

Op. O.L.C., 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case. The Commissioner argues that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff (Doc. 13, at 14-20 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))). Specifically, the Commissioner contends that regardless of the constitutionality of the removal restriction in 42 U.S.C. § 902(a)(3), a Senate-confirmed Commissioner has full authority to carry out the responsibilities of his or her office (Doc. 13, at 15). Expounding on this point, the Commissioner argues that the ALJ in the instant case held office under an appointment ratified by a former Acting Commissioner, and thus not subject to the removal restriction in 42 U.S.C. § 902(a)(3) (Doc. 13, at 16 n.4). Moreover, the Commissioner maintains that even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, Plaintiff cannot show that the removal restriction inflicted actual compensable harm on him (Doc. 13, at 16-20). The Commissioner also argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations (Doc. 13, at 20-24).

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision"). Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause. *See* 42 U.S.C. § 902(a)(3). In *Seila Law*, the Supreme

Court found that the Consumer Financial Protection Bureau's ("CFPB") single-director structure, who could only be removed by the President for cause, violated constitutional separation of powers. 140 S. Ct. at 2197. The Supreme Court reasoned that the President retains ultimate responsibility for use of the executive power and has an active obligation to supervise executive officers to whom he may delegate his authority. *Id.* at 2203. The Court found that this constitutional responsibility was thwarted by limitations on the President's ability to remove the Director of the CFPB. *Id.* However, the Supreme Court held that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction." *Id.* at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

In a similar case, the Supreme Court relied on *Seila Law* in finding that "[a] straightforward application of our reasoning in *Seila Law*" likewise rendered unconstitutional the statutory protection from removal except for cause that was afforded to the Director of the Federal Housing Finance Authority ("FHFA"). *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021). Thus, the Court held that the provision limiting the President to removing the director of the FHFA only for cause violated the separation of powers. *Id.* at 1783 (holding that "*Seila Law* is all but dispositive"). Notwithstanding, the Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm

resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." 141 S.Ct. at 1781. The Court also concluded:

> All the officers who headed the [agency] during the time in question were properly appointed. Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] in relation to the [challenged action] as void.

*Id.* at 1787. Nevertheless, the Court noted that to obtain retrospective relief, a plaintiff must show that "an unconstitutional provision ... inflict[ed] compensable harm." 141 S. Ct. at 1789.

Although, the Eleventh Circuit has yet to rule on this precise constitutional challenge, "[m]ultiple courts reviewing denials of applications for Social Security Benefits in the wake of *Seila Law* and *Collins* have similarly concluded plaintiffs must establish the removal provision of 42 U.S.C. § 902(a)(3) caused some compensable harm to warrant remand." *Dixon v. Kijakazi*, No. 20-82316-cv-Smith/Matthewman, 2022 WL 2908497, at *12 (S.D. Fla. May 26, 2022), report and recommendation adopted, 2022 WL 2904549 (S.D. Fla. July 22, 2022) (quoting *Rickles v. Kijakazi*, 2022 WL 1153803, at *5–6 (M.D. Fla. Apr. 19, 2022) (finding that claimant did not establish that the ALJ's review of her Social Security claim for benefits suffered from any "unconstitutional taint" because she failed to argue that she suffered any form of compensable harm stemming from the removal provision of 42 U.S.C. § 902(a)(3)); *see also Smith v. Kijakazi*, 2022 WL 1063640, at *9 (N.D. Ala. Apr. 8,

2022) (rejecting the claimant's argument that Commissioner Saul's extended tenure affected her disability determination because it was conclusory.).

In the instant case, Plaintiff asserts that the government deprived him of a valid administrative adjudicatory process (Doc. 12, at 22). Plaintiff argues that former Commissioner Andrew Saul was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by him or pursuant to his authority were unconstitutional (Doc. 12, at 22-23). Plaintiff contends that because former Commissioner Saul delegated his authority to the ALJ who issued a decision in his case and the ALJ decided this case under regulations promulgated by former Commissioner Saul, the delegation of authority was constitutionally defective and a "presumptively inaccurate legal standard was utilized to adjudicate this disability claim at the administrative level" (Doc. 12, at 22-23).

Even assuming *arguendo* that the removal provision is unconstitutional, Plaintiff is not entitled to a remand based on this argument because the removal provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.

As noted by the Commissioner, the ALJ who rendered the decision in this case was appointed by former Acting Commissioner Nancy Berryhill (Doc. 13, at 16 n.4). Thus, unlike a commissioner who is appointed by the President and confirmed by the Senate, an *Acting* Commissioner does not enjoy a statutory tenure protection. *See* 42 U.S.C. 902(b)(4); *see also Boger v. Kijakazi*, No. 1:20-cv-00331, 2021 WL 5023141, at * 3 n.4 (W.D.N.C. Oct. 28, 2021) ("Indeed, Plaintiff's

constitutional 'removal restriction' argument is likely not even applicable to this case because ALJ Howard was appointed by an *Acting* Commissioner of Social Security who could be removed from that office at the President's discretion.''). Since the President is not restricted from removing an Acting Commissioner, the actions taken under the Acting Commissioner, including appointing an ALJ, would not be attributable to a constitutional violation. *See Collins*, 141 S.Ct. at 1781, 1787.

Moreover, while the Supreme Court in *Collins* found that an unconstitutional removal provision could "inflict compensable harm," Plaintiff has failed to identify how the removal provision at issue here caused him compensable harm. *See Collins*, 141 S. Ct. at 1788-89. The record and briefing is absent of any evidence that suggests that the President's restriction to remove Commissioner Saul somehow affected the ALJ's and, ultimately, the Commissioner's decision to find Plaintiff not disabled. Therefore, Plaintiff's separation of powers argument has no merit.

**IV.**

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1.   The decision of the Commissioner be REVERSED and the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with the foregoing.

2.   The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 23rd day of February, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:    Hon. Judge William F. Jung
       Counsel of Record